[No. 675-2.    Division Two.    February 28, 1973.]

OLIVER LANNING, *Appellant*, v. POULSBO RURAL TELEPHONE ASSOCIATION *et al.*, *Respondents*.

*William D. Cameron* (of *Williams, Lanza, Kastner & Gibbs*), for appellant.

*Theodore J. Collins* (of *Perkins, Coie, Stone, Olsen & Williams*), for respondents.

PEARSON, C.J.—The litigation involved in this appeal was in the nature of a minority shareholder's suit against a Washington corporation engaged in public utility service. Without detailing the various claims and cross claims asserted between the appellant, Oliver Lanning, and the respondent, Poulsbo Rural Telephone Association, O. E. Serwold and Helen Berbower,[1] this appeal is concerned only with a portion of the final judgment which dismissed a tort claim by Mr. Lanning against the respondent, Poulsbo Rural.

The tort claim arose out of Lanning's attempt, as a minority shareholder of Poulsbo Rural Telephone Association, to acquire additional stock from one of several minority shareholders to enable him to elect one or more directors to the board of the corporation. One of these shareholders was Ina Hallen, an elderly lady of 81 years, residing in a rest home. Lanning paid a visit to Mrs. Hallen on May 22, 1970, seeking to acquire her stock. The visit resulted in Mrs. Hallen's signing a document which stated in part:

> For value received, I, Ina Hallen, hereby sell, assign and transfer unto Oliver Lanning, all of my shares believed to be thirty-six (36) shares of the Poulsbo Rural Telephone Capital Stock of the Poulsbo Rural Telephone Association standing in my name on the books of said corporation represented by Certificate No. (lost certificate)
> . . .

The purchase price was $15 per share. The testimony established that although Ina Hallen did not know how many shares she owned nor where her stock certificate was, she, in fact, was the owner of 23 shares, represented by the company stock certificate No. 688, which was issued to her on October 9, 1953. The certificate, however, had never been delivered to her, but remained attached to its stub in the company's stock record book. It also appears without dispute that the book value of the stock at this particular time was approximately $115 per share.[2]

---

[1] The two named individuals were, respectively, president and secretary of the corporation.

[2] The assets of Poulsbo Rural were subsequently sold in June, 1971,

Shortly after this transaction took place, Mrs. Hallen told her grandson, Steven Hallen, about the transaction and after his inquiry concerning the value of the stock, he advised his grandmother to have nothing further to do with Oliver Lanning, not to accept any money from him, or talk with him. A specific cash tender of the purchase price was rejected by Mrs. Hallen in September, 1970. In the summer of 1970, Mrs. Hallen determined to make a gift of her stock to her grandson, Steven Hallen, and her granddaughter, Dianne Hallen.

In February of 1971, Lanning's attorney tendered the stock assignment to Poulsbo Rural, requesting the corporation to issue to Lanning the 23 shares of stock registered to Ina Hallen. During March of 1971, Poulsbo Rural's attorney telephoned Steven Hallen and advised him that Lanning was attempting to have Ina Hallen's stock transferred and that the assignment instrument had been presented to Poulsbo Rural by Lanning. A meeting then took place between Ina Hallen and Poulsbo's attorney, at which Mrs. Hallen gave her version of the assignment. Poulsbo's attorney, Mr. J. Paul Coie, advised Ina Hallen and Steven Hallen that he did not consider the assignment to Lanning as valid. On March 11, 1971 Mr. Coie advised Lanning's attorney that the corporation refused to transfer Ina Hallen's stock to Lanning. Upon Mrs. Hallen's request, her 23 shares were transferred by gift to her grandchildren, and upon presentation of the endorsed stock certificate to the corporation, Poulsbo Rural issued new stock certificates to Steven and Dianne Hallen.

█ In the portion of this suit which is subject to this appeal, Lanning contended that Poulsbo tortiously interfered with the contract relationship he had with Mrs. Hallen, and that he was entitled to damages on that theory. He also claimed that Poulsbo Rural was liable to him for wrongfully registering the shares to Steven and Dianne Hallen, and he sought damages under RCW 62A.8-404(2).

producing a consideration of approximately $550 for each share of stock.

The case was tried to the court and resulted in a ruling favorable to Poulsbo Rural on both theories of recovery. We consider first appellant's contention that the trial court erred in ruling against his claim for damages on the theory of tortious interference with contract.

In its oral opinion, the trial court stated:

> I think it's quite clear that after the summer of 1970, or certainly after September of 1970, that Mrs. Hallen, had she come into possession of the stock certificate for her 23 shares, would not have turned it over to Mr. Lanning. I think the great probabilities are that so far as she was concerned the deal was definitely off at that time. If that's true, no harm was done, by what took place in the spring of 1971, and what was said and done by Mr. Coie as attorney for the defendant company.

It is well settled that to sustain a tortious interference theory of recovery it was necessary that the court find Mr. Coie's action was a moving cause of Mrs. Hallen's refusal to carry out the assignment of her shares of stock to Lanning. *See Valley Land Office, Inc. v. O'Grady,* 72 Wn.2d 247, 432 P.2d 850 (1967).

■ There was substantial evidence in the record to the effect that Mrs. Hallen, through her grandson, Steven Hallen, had repudiated this transaction with Mr. Lanning before Poulsbo Rural or its attorney were involved. Accordingly, the trial court was fully justified in this finding of fact and it is not our function to determine the matter in a contrary fashion.

Appellant contends, however, that once Mrs. Hallen executed the assignment without reserving the power of cancellation or termination, there was no way she could effectively repudiate the transaction prior to the "tortious interference" by Poulsbo Rural. Consequently, the trial court was not justified in concluding that a repudiation had previously occurred.

■ ■ We agree with appellant that under the provisions of RCW 62A.8-308(1),[3] the assignment was the equiv-

---

[3]RCW 62A.8-308(1) provides: "An indorsement of a security in registered form is made when an appropriate person signs on it *or on a*

alent of an endorsement of the shares owned by Mrs. Hallen. But it is not until the shares have been delivered that the purchaser acquires the transferor's rights in the security. RCW 62A.8-309. Thus, two distinct steps are necessary to a transfer, namely, endorsement and delivery. *See* Official Comment 3, RCWA 62A.8-301.

While Mrs. Hallen may not have had the power to cancel the assignment, she did have the power to repudiate the transaction by refusing to transfer possession of the certificate. Where the certificate was not in her possession, her repudiation took the form of refusing to accept the consideration when tendered and informing Mr. Lanning that she was not willing to go through with the sale. This repudiation took place before the corporation became involved in the transaction and justified the trial court's conclusion that Mr. Coie's action, if it was wrongful, was not a moving cause of the contract repudiation.

Appellant's second theory of recovery is premised (1) upon an alleged breach of the corporation's duty of inquiry as required by RCW 62A.8-403(1)(a), or (2) the corporation's alleged wrongful registration of the securities to persons "not entitled" to them under RCW 62A.8-404(2).

■ Again, we agree with appellant that these statutes make an issuer liable to the true owner of shares of stock for breach of a duty to inquire by "any reasonable means" (RCW 62A.8-403(1)(a)), where timely written notice of an adverse claim is received. Also, the corporation is liable for wrongfully registering shares to a person not entitled to them. RCW 62A.8-404(2).

It is also true, as appellant contends, that the corporation had written notice of appellant's claim to the stock at the time it registered the shares to Mrs. Hallen's grandchildren. We point out, however, that appellant's cause of action on this theory was dismissed only because Mrs. Hallen and the grandchildren who then held the stock were not

*separate document an assignment or transfer of the security* or a power to assign or transfer it or when the signature of such person is written without more upon the back of the security." (Italics ours.)

parties to the action. Under these circumstances, the court declined to determine the question of ownership of the shares and concluded that establishing true ownership was a prerequisite to determining liability under either RCW 62A.8-403(1)(a) or RCW 62A.8-404(2). We agree with the trial court on both propositions and agree that the dismissal as it related to this question should be without prejudice.

It is obvious to us that the decision as to true ownership would not have been binding on those claimants who were not parties. To have allowed a determination of that question might result in the anomaly of having Mr. Lanning adjudged to be the true owner of the 23 shares in this action, while Steven and Dianne Hallen might prevail on that issue in later litigation.

Furthermore, as we have pointed out, delivery was necessary to accomplish a transfer of the shares to appellant. The endorsement (via the assignment) did not constitute a transfer. (RCW 62A.8-309.)[4] The proof does not show that appellant was *entitled to the stock* because his right to have delivery from Mrs. Hallen had not yet been adjudicated.

We, likewise, disagree with appellant's contention that a constructive delivery was accomplished by the assignment. It may be that under certain circumstances a delivery may take place without a physical change of possession of the certificate. However, RCW 62A.8-309 specifically denies the transfer where the endorsement is on a separate document "until delivery of both the document and the security" has been accomplished.

The assignment unquestionably gave appellant a contract action against his transferor for delivery of the certificate. It did not, without more, make him the true owner, so as to support an action against the corporation for wrongful registration.

We hold that under the provisions of RCW 62A.8-

---

[4]RCW 62A.8-309 provides: "An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears *or if the indorsement is on a separate document until delivery of both the document and the security.*" (Italics ours.)

404(2), proof of ownership is a prerequisite to the maintenance of an action for wrongful registration. If the rule were otherwise, the transfer agent, who is presented with conflicting claims, would be forced at his peril to make an extrajudicial determination of ownership, when such determination is more properly for the courts. *See* W. Fletcher, *Private Corporations* § 5528 (perm. ed. 1971).

Mr. Coie, we think, was justified on behalf of Poulsbo Rural in rejecting appellant's claim to the stock after ascertaining that the then registered owner, Mrs. Hallen, had repudiated the transaction by refusing to complete delivery of the certificates. Appellant's remedy at that point was against Mrs. Hallen—not against the corporation.

Judgment affirmed.

PETRIE and ARMSTRONG, JJ., concur.