BANKWEST, N.A., a National Banking Corporation, Plaintiff and Appellee,

v.

Pamela K. WILLIAMS, Defendant and Appellant.

No. 14161.

Supreme Court of South Dakota.

Considered on Briefs Jan. 19, 1984.

Decided April 11, 1984.

John S. Lovald of Duncan, Olinger, Srstka, Lovald & Robbennolt, P.C., Pierre, for plaintiff and appellee.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for defendant and appellant.

HENDERSON, Justice.

Appellant, Pamela K. Williams, appeals from a declaratory judgment issued by the Circuit Court, Sixth Judicial Circuit, in favor of Bankwest, N.A., establishing its rights as a judgment creditor to the proceeds of 317 shares of stock previously owned by appellant's ex-husband, Tane K. Williams. We affirm.

For purposes of clarity and convenience, we shall refer to appellant as "Pamela," appellant's ex-husband as "Tane," and appellee as "Bankwest." Pursuant to a separate action in Hughes County, South Dakota, Bankwest, a national banking institution doing business in Pierre, obtained judgment against Tane on November 24, 1981, in the principal sum of $18,130.22. Judgment was upon three promissory notes issued by Tane.

Sometime between April and May of 1980, Tane acquired 317 shares of common capital stock in the American State Bank in Pierre, South Dakota, and received certificates in his name representing these shares. That summer, Tane pledged the shares as collateral for a $20,000.00 loan from the National Bank of South Dakota (National Bank). The certificates were endorsed in blank and delivered to National

Bank along with the duly executed pledge agreement. This loan and the collateral security were later purchased by Bankwest in the fall of 1981.

On January 2, 1981, Pamela obtained a divorce from Tane in Las Vegas, Nevada. The decree provided for alimony payments of $22,000.00 per year. Several weeks after the divorce, by separate writing, Tane gave and transferred this stock to his ex-wife, Pamela, in lieu of his 1981 alimony payment. The certificates representing the stock were never endorsed by Tane to Pamela, nor were they ever delivered to her. The certificates were never reissued in the name of Pamela. Pamela did not notify American State Bank of the agreement nor ask it to transfer the stock.

After notice and pursuant to the U.C.C., the shares were sold at private sale. The proceeds were then applied against the debt originally due National Bank and the surplus was tendered to the circuit court subject to distribution after declaratory judgment.

Pamela claims she has sole right to the proceeds of the sale of the certificates over the amount cancelling the indebtedness for which they were held. Bankwest claims there was not a valid delivery transferring ownership of the securities. Therefore, Bankwest asserts it could execute upon the proceeds to satisfy its judgment against Tane.

■ As these stock certificates are negotiable instruments, resolution of this matter is governed by South Dakota's version of the U.C.C. SDCL 57A–8–102(1) and SDCL 57A–8–105(1). " 'Delivery' with respect to instruments ... means voluntary transfer of possession." SDCL 57A–1–201(14).

(1) Delivery to a purchaser occurs when
(a) He or a person designated by him acquires possession of a security; or

＊　　＊　　＊　　＊　　＊　　＊

(d) With respect to an identified security to be delivered while still in the possession of a third person when that

person acknowledges that he holds for the purchaser; or
(e) Appropriate entries on the books of a clearing corporation are made under § 57A–8–320....

SDCL 57A–8–313(1)(a, d, e). Pamela did not acquire possession of the security, for it was being held by National Bank; thus there was no delivery under item (a). Neither did National Bank acknowledge it was holding the certificates for Pamela. In point of fact, it was never notified of the agreement transferring the stock. Pamela also testified that she did not notify American State Bank of the agreement, nor did she request a change of name on its books. There was, then, no delivery under provisions (d) and (e).

■ Without delivery, the agreement, in itself, could not act to validly transfer ownership of the stock. When a transfer is by separate document, SDCL 57A–8–309 specifically states: "An endorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the endorsement is on a separate document until delivery of both the document and the security."

Appellant's reliance on several cases recognizing common law constructive delivery is misplaced. Those cases dealt with gifts of securities and were not decided upon application of the U.C.C. Cases which directly pertain to U.C.C. provisions hold otherwise. "[The statute] specifically denies the transfer where the endorsement is on a separate document 'until delivery of both the document and the security' has been accomplished." *Lanning v. Poulsbo Rural Tel. Ass'n*, 8 Wash.App. 402, 407, 507 P.2d 1218, 1222 (1973). "Actual transfer of physical possession is a prerequisite to delivery." *United States v. Doyle*, 486 F.Supp. 1214, 1219 (D.C.Minn.1980); *Morris v. Kaiser*, 292 Ala. 650, 299 So.2d 252 (1974). *See also,* 15A Am.Jur.2d *Commercial Code* § 101 (1976), and cases cited therein.

The execution of the January 16, 1981 agreement between Tane and Pamela did

not constitute an effective delivery transferring ownership in the 317 shares of stock. The stock remained in the name of Tane. Bankwest, having a valid judgment against Tane, could lawfully execute upon the proceeds arising from the sale of the stock to satisfy its claim.

Affirmed.

All the Justices concur.