liNORRIS, Judge.
The garnishee, Moss Neck Manor Inc., appeals a judgment finding that a simulated and fraudulent transfer of its stock violated the Investment Securities Registration Law, La.R.S. 10:8-403,[1] and ordering it to pay the plaintiff, Mitchell Kugle, principal, interest, costs and attorney fees, for which Kugle had previously obtained judgment against the defendants, Michael and Susanne Hennessy. Finding the district court erred in its application of the statute and of the parties’ stipulations, we reverse.

Procedural background

In the early 1980s Michael and Susanne Hennessy hired Kugle as their accountant/bookkeeper. He later sued them for unpaid wages and obtained a default judgment for $20,218.89 in wages, $6,000 in statutory penalties, and 25% attorney fees plus interest from date of judicial demand.[2] Ku-gle obtained a writ of fifa against the Hen-nessys.
On April 18,1986 Kugle filed a supplemental petition of garnishment alleging that Moss Neck had “dividends, stock, [or] property * * * in their possession, or under their control, belonging to” the Hennessys. Moss Neck was served with the supplemental petition, citation and interrogatories on May 8, 1986. In answers to interrogatories Moss Neck’s president, Elizabeth H. Powell (Michael Hennessy’s mother), stated that the Hennessys owned 434 shares of common stock in Moss Neck, represented by three certificates; that this ownership interest was not in the possession or control of Moss Neck; that Moss Neck was not indebted to the Hennessys; and that the company paid dividends quarterly in varying amounts. |2The date of Mrs. Powell’s verification was May 30, 1986. On the basis of this answer, the district court rendered judgment against Moss Neck on July 7,1986, affecting only the dividends from the stock until the judgment was paid.
One week later, however, Moss Neck moved to reopen the case. It claimed that it was recently informed that the Hennessys had actually assigned their Moss Neck stock in 1982. By amended answers to interrogatories, Mrs. Powell stated that although the Hennessys transferred all their Moss Neck stock to her, Mrs. Powell, in April 1982, she did not deliver the transfer documents and certificates to the company until May 1986, and the company issued a new certificate to *238 her only on May 29, 1986. She also denied that Moss Neck paid any dividends to the Hennessys. On the basis of this amended answer, the district court set aside the judgment of garnishment on July ll.[3] Kugle never traversed Moss Neck’s amended answer or appealed the order setting aside the judgment of garnishment.
Some months later Kugle later filed a supplemental petition to set aside as a simulation the sale of stock from the Hennessys to Mrs. Powell. His principal claim was that the transfer was simulated and fraudulent. He also claimed that Moss Neck violated R.S. 10:8-403, which provided:[4]
§ 8-403. Limited duty of inquiry
(1) An issuer to whom a security is presented for registration is under a duty to inquire into adverse claims if
(a) A written notification of an adverse claim is received at a time and in a manner which affords the issuer a reasonable opportunity to act on it prior to the issuance of a new, reissued or re-registered security and the notification identifies the claimant, the registered owner and the issue of which the security is a part and provides an address for communications directed to the claimant[.]
♦ ifs i\t * * *
(2) The issuer may discharge any duty of inquiry by any reasonable means, including notifying an adverse claimant by registered or certified mail at the address furnished by him * * * that Uthe security has been presented for registration of transfer by a named person, and that the transfer will be registered unless within thirty days from the date of mailing the notification, either
(a) An appropriate restraining order, injunction or other process issues from a court of competent jurisdiction; or
(b) An indemnity bond sufficient in the issuer’s judgment to protect the issuer * * * from any loss which it or they may suffer by complying the adverse claim is filed with the issuer.
Kugle contended that Moss Neck violated this statute in that it received notice that a creditor (Kugle) was asserting an interest in the stock but then transferred it to Mrs. Powell without advising Kugle that he had 30 days in which to obtain an injunction or post a bond. Kugle moved for partial summary judgment on this issue; the district court denied it. Moss Neck filed an exception of res judicata and motion to dismiss, asserting inter alia that the transfer to Mrs. Powell was valid, the petition of garnishment was not a satisfactory notice under § 8-403(2), and the Hennessys’ debts had been discharged by a bankruptcy adjudication in Georgia. The court denied this exception and motion.
The matter was tried on March 1, 1996 on stipulated facts and argument. Of special note is the first joint stipulation:
(a) It is acknowledged and agreed that Plaintiffs only claim herein is against Moss Neck Manor Inc. for an alleged violation of La.R.S. 10:9-403. Specifically, no claims are being made against Mrs. Elizabeth H. Powell individually, and no claim is being made to overturn or otherwise affect the transfer of Moss Neck Manor Inc.’s stock certificates * * * from Michael Hennessy to Mrs. Elizabeth H. Powell.
(emphasis added)
Also submitted was the deposition of the Hennessys’ CPA, Jim Bates, who testified that between January 1983 and the first quarter of 1986 the Hennessys received dividends from Moss Neck totaling over $52,000. Another stipulated exhibit was a collateral installment note dated April 21, 1982, in which the Hennessys borrowed $85,000 from Mrs. Powell, and assigned and delivered all the subject stock as security.

*239
14Action of the District Court

In a written ruling the district court found that Kugle had presented “compelling” proof that the transfer from the Hennessys to Mrs. Powell was a simulation. The court also found that when Moss Neck received Kugle’s supplemental petition of garnishment and attached interrogatories, this constituted written notice of an adverse claim on the Hen-nessys’ stock under § 8-403(l)(a). Moss Neck was therefore required to inquire into the adverse claim, including notifying Kugle[5] by registered mail that he had 30 days from the date of notification to protect his claim before the transfer took place. The court further found that Moss Neck did not provide the required notice. Finally, the court found that the dividends from the stock would have satisfied the judgment. The court rejected each of the defenses as merit-less, and rendered judgment against Moss Neck for $26,218.89 plus legal interest, court costs and attorney fees. Moss Neck appeals, raising seven assignments of error.

Discussion

By its third assignment of error, Moss Neck urges the district court erred in finding a violation because Kugle did not establish an “adverse claim” to the stock under § 8-403(1). Moss Neck argues that “adverse claim” means an “ownership claim”; service of garnishment and interrogatories do not suffice as an adverse claim, and thus did not entitle Kugle to the protection of § 8-403(2). Moss Neck further argues that any assertion of interest that Kugle may have lodged was lost, under La.C.C.P. art. 2414, when he failed to traverse Moss Neck’s amended answers to interrogatories.
According to the stipulations, Moss Neck was served with supplemental garnishment papers on May 8, 1986. At the time, an “adverse claim” was broadly | gdefined in R.S. 10:8-302(2) to “include[ ] a claim that a transfer was or would be wrongful or that a particular adverse person is the owner or has an interest in the security” (emphasis added).[6] Thus Moss Neck is technically incorrect to argue that an adverse claim, as it was then defined, meant only an ownership claim. See R.S. 10:1-201(25). We would be reluctant to hold that the instant garnishment documents could serve as a notice of adverse claim under § 8-403; however, we pretermit this issue because other assignments raised by Moss Neck necessitate reversal.
By its fourth assignment Moss Neck urges that even if Kugle asserted a valid adverse claim, he waived its effects by failing to traverse the garnishee’s answers to interrogatories and allowing the District Court to set aside the judgment of garnishment. La. C.C.P. art. 2414 provides, in pertinent part:
Unless the creditor files a contradictory motion traversing the answer of the garnishee within fifteen days after service upon him of the notice of the filing of the garnishee’s answer, any property of the judgment debtor in the possession of the garnishee and any indebtedness to the judgment debtor which the garnishee has not admitted holding or owning shall be released from seizure. A new seizure may be made of such property or indebtedness by filing a supplemental petition and serving additional interrogatories.
Kugle’s failure to traverse Moss Neck’s answer had the effect of ipso facto releasing the dividends from seizure. Allied Finance Co. v. Rogers, 215 So.2d 400 (La.App.2d Cir.1968). Kugle’s judgment of garnishment was vacated, no appeal was taken, and no further garnishment was effected; the nonexistent judgment certainly could not serve as an adverse claim under § 8-403.[7]
IfiBy its sixth and seventh assignments of error, Moss Neck urges that even if *240 it failed to comply with § 8-403, its conduct deprived Kugle of at most a 30-day delay before the transfer was registered, and did not cause Kugle any damages. Assuming arguendo that Kugle had somehow made a valid adverse claim, we would be constrained to find that the remedy for a violation is fixed by statute. La.R.S. 10:8-403 provided,[8] in pertinent part:
§ 8-404. Liability and nonliability for registration
(1) Except as otherwise provided in any law relating to the collection of taxes, the issuer is not liable to the owner or any other person suffering loss as a result of the registration of a transfer of a security if
(a) There were on or with the security the necessary indorsements (R.S. 10:8-308); and
(b) The issuer had no duty to inquire into adverse claims or has discharged any such duty (R.S. 10:8-403).
(2) Where an issuer has registered a transfer of a security to a person not entitled to it the issuer on demand must deliver a like security to the true owner unless
(a) The registration was pursuant to Subsection (1); or
(b) The owner is precluded from asserting any claim for registering the transfer under Subsection (1) of the following section [pertaining to lost, destroyed or stolen documents]; or
(c) Such deliver would result in overis-sue, in which ease the issuer’s liability is governed by R.S. 8:104.
(emphasis added)
In short, the remedy for wrongful registration is that the issuer must deliver a “like security to the true owner.” There is no showing that Kugle is entitled, as the true owner of 434 shares of Moss Neck stock, to the delivery of any shares, or that the Hen-nessys were the true owners, although such proof is essential to recovery under § 8-404. See Lanning v. Poulsbo Rural Tel. Ass’n, 507 P.2d 1218, 8 Wash.App. 402 (2 Div.1973). Without such showing, the instant judgment lacks legal basis. In fact, the district court was precluded by stipulation (a), cited above, from considering the issue of the ownership of the stock. The ^stipulation binds all parties and the court. R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600 (La.1983); Hill Wholesale Distr. Co. v. Louis W. Howat & Son, 27,936 (La.App.2d Cir. 1/24/96), 666 So.2d 1252. The district court’s various dicta regarding fraud and simulation in the transfer from the Hennessys to Mrs. Powell were therefore improper and erroneous.
We finally note that even if an adverse claim had been properly lodged, a violation by the issuer proved, and finding of fraud or simulation somehow appropriate, there is no evidence on the instant record that any dividends were paid on this stock after the judgment of garnishment issued. Jim Bates’s deposition established that substantial dividends were paid between January 1983 and March 1986, but not that any dividends were paid and subject to garnishment after May 8, 1986. The record does not even disclose the market value of the stock itself. On this showing, we could not affirm a judgment drawn from unproved stock dividends.

Conclusion

For the reasons expressed, the district court erred in finding that Moss Neck violated the R.S. 10:8-403 by failing to give a 30-day notice, and in granting relief that exceeded the remedy of R.S. 10:8-404 and the parties’ joint stipulation. The judgment is therefore REVERSED at the plaintiff’s costs.
REVERSED.
BROWN and PEATROSS, JJ., concur.
APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, BROWN, WILLIAMS and PEATROSS, JJ.
Rehearing denied.

. This case involves the Investment Securities Registration law as it provided at the operative times, 1982 through 1986. The law has been twice amended since then, and we will mention the new provisions only as necessary to clarify the instant discussion.

. This court affirmed the denial of the Hennes-sys’ motion for new trial in Kugle v. Hennessy, 480 So.2d 849 (La.App.2d Cir.1985).

. The order setting aside the judgment of garnishment and reopening the case was apparently “walked through” as the district judge signed it before the motion itself was file stamped on July 14. R. pp. 93, 90.

. The statute received minor changes by La.Acts 1989, No. 135, and substantial amendment by La.Acts 1995, No. 884, effective January 1, 1996.

. In its written ruling the court actually said Moss Neck had to notify the Hennessys by registered mail of the 30 days to preserve their claim. As the Hennessys have not made any claim to the stock, this statement is obviously wrong.

. Since the 1995 amendment, “adverse claim” is more restrictively defined as "a claim that a claimant has a property interest in a financial asset and that it would be a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset.” La.R.S. 10:8 — 102(a)(1) (emphasis added); see also Hawk-land, Uniform Commercial Code Series, § 8-403:01 (Clark Boardman, 1996).

.We also note that by the time the judgment of garnishment was obtained, Moss Neck had already registered the transfer to Mrs. Powell, so there would be no point in giving Kugle a 30-day *240 notice "that the security has been presented for transfer.”

. Prior to minor amendment by La.Acts 1989, No. 135, and significant revision by La.Acts 1995, No. 884, effective January 1, 1996.