[2PETTIGREW, J.
In this case, A & B Bolt and Supply, Inc. (“A & B Bolt”) appeals from the trial court’s denial of its Rule for Judgment Pro Confesso in a garnishment proceeding filed against Hibernia National Bank (“Hibernia”) as garnishee, relative to a judgment obtained by A & B Bolt against Standard Offshore Services, Inc. (“Standard”). For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On October 24, 2001, A & B Bolt obtained a judgment against Standard in the amount of $28,736.46, together with legal interest from the date due until paid and attorney fees in the amount of $1,500.00.[1] Thereafter, on January 11, 2002, A & B Bolt instituted a garnishment proceeding against Hibernia, including a statement of sums due and interrogatories. Hibernia answered the garnishment interrogatories, indicating Standard did have account number 882141551 with a balance of $8,000.00 in its institution. Hibernia claimed, however, it was the holder of a promissory note made by Standard that was in default pursuant to the terms of the note and Louisiana law, including La. R.S. 6:316 and La. Civ.Code art. 3157. Hibernia maintained it “holds and held prior to service of the garnishment interrogatories, rights of pledge, compensation and offset against all funds on deposit in said account to secure note.” Accordingly, Hibernia asserted, no funds existed in Standard’s account for the benefit of A & B Bolt.
In response thereto, A & B Bolt filed a Rule for Judgment Pro Confesso, which was set for hearing on May 28, 2002. Counsel for A & B Bolt and Hibernia presented the court with argument, and Hibernia introduced into evidence a copy of the April 14, 2000 promissory note and commercial security agreement referred to in its answers to the garnishment interrogatories. On May 29, 2002, the court rendered judgment in favor of Hibernia, dismissing the Rule for Judgment Pro Confesso at A & B Bolt’s cost. It is from | ¡¡this judgment that A & B Bolt has appealed, assigning the following specifications of error:[2]
1. The trial court erred in not granting A & B the garnishment proceeds in the amount of $8,000.00 held in Account Number 882141551 of Hibernia in the name of Standard.
2. The trial court erred in concluding that the Commercial Security Agreement signed by Standard in favor of Hibernia, specifically, Deposit Accounts, Page 2, was the controlling document in determining the proper party entitled to the garnishment proceeds in Account Number 882141551 in the name of Standard.
3. The trial court erred in concluding that Hibernia had placed Standard in default of the Commercial Security Agreement.
Thus, the central issue to be decided by this court is whether Hibernia acquired a statutory pledge pursuant to La. R.S. 6:316 such that it would be entitled to apply the funds in account number 882141551 to offset Standard’s indebtedness owed to Hibernia by virtue of the *511 promissory note dated April 14, 2000, and the accompanying commercial security agreement.
DISCUSSION
On appeal, A & B Bolt argues there is no evidence Standard was placed in default by Hibernia prior to the service of the garnishment interrogatories. Noting that pursuant to La.Code Civ. P. art. 2411, the seizure effected by a garnishment proceeding becomes effective upon service of the garnishment proceedings, A & B Bolt contends its claim to the funds in Standard’s account at Hibernia outranks Hibernia’s claim. A & B Bolt maintains that La. R.S. 6:316, the statute relied on by Hibernia in asserting a privilege to the funds in Standard’s account, “merely creates the right” but “does not make it a self-enforcing privilege.” As such, A & B Bolt argues, in order for Hibernia’s privilege to be “perfected,” Standard must be placed in default and given notice of same.
In response, Hibernia contends La. R.S. 6:316 creates a “statutory pledge which gives a bank the right to offset the bank account when there is a default, which will apply to any and all funds on deposit to fulfill that obligation.” With regard to A & B Bolt’s ^argument that Standard was not in default on the promissory note at the time the garnishment proceedings were served on Hibernia, Hibernia asserts that pursuant to the terms of the commercial security agreement, Standard was in default on the promissory note by virtue of its indebtedness to A & B Bolt.
As correctly noted by Hibernia in brief, La. R.S. 6:316 creates a statutory pledge that gives a bank the right, upon a depositor’s default on an obligation owed to the bank, to apply any and all funds on deposit toward payment of that obligation. Mahler v. First National Bank of Houma, 93-0619, p. 3 (La.App. 1 Cir. 3/11/94), 634 So.2d 22, 24. This statute provides, in pertinent part, as follows:
A. Notwithstanding the provisions of Civil Code Articles 1893 et seq., compensation takes place by operation of law between funds held on deposit with any bank domiciled or having a branch office in this state and any loan, extension of credit, or other obligation incurred by the depositor in favor of the bank. This compensation shall apply to those funds on deposit which the depositor has the right to withdraw on his request or endorsement alone, except funds deposited in an Individual Retirement Account or other type of tax-deferred account. The funds to which this compensation applies shall be deemed to be pledged by the depositor in favor of the depository bank.
[[Image here]]
C. In the event that the depositor should default under any loan, extension of credit or other direct or indirect obligation of any nature and kind whatsoever in favor of the depository bank, the bank shall have the right to apply any and all funds that the depositor then has on deposit with the bank or on which the bank has taken a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.) towards the payment of the depositor’s indebtedness or obligations, whether such payment satisfies the indebtedness or obligations in whole or in part. The exercise of the bank’s remedies under this Subsection shall not affect any other rights and remedies available to the bank following the depositor’s default.
D. The bank shall notify the depositor in writing within two business days following the exercise of the bank’s remedies under Subsection C of this Section. Such notice shall be forwarded by regis *512 tered or certified mail to the depositor’s most current address reflected in the bank’s records. In the event that the bank mails such a notice to the depositor within the above time period, the bank shall have no liability to the depositor or to any other person or persons as a result of the bank’s dishonor of checks or drafts drawn on the depositor’s accounts with the bank. [Emphasis added.]
Although the trial court did not offer any reasons for judgment, the court did note in its May 29, 2002 judgment that it found the commercial security agreement to be ^controlling, specifically referring to a section entitled “DEPOSIT ACCOUNTS” located on page two of the agreement. A review of the agreement reveals the following language:
DEPOSIT ACCOUNTS. As collateral security for repayment of the Indebtedness and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower or Grantor (or any of them) may now and in the future owe to Lender or incur in Lender’s favor, ... Grant- or is granting Lender a continuing security interest in any and all funds that Grantor may now and in the future have on deposit with Lender .... Grantor further agrees that Lender may at any time apply any funds that Grantor may have on deposit with Lender ... against the unpaid balance of Borrower’s Note and any and all other present and future indebtedness and obligations that Borrower or Grant- or (or any of them) may then owe to Lender, in principal, interest, fees, costs, expenses, and attorneys’ fees. [Emphasis added.]
Moreover, we note the following language found in the commercial security agreement concerning what constitutes a “default” under the agreement:
EVENTS OF DEFAULT. The following actions or inactions or both shall constitute Events of Default under this Agreement:
[[Image here]]
Default in Favor of Third Parties. Should Borrower, Grantor, or any Guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor’s property, or Borrower’s or Grantor’s or any Guarantor’s ability to perform their respective obligations under this Agreement, or any Related Document, or pertaining to the Indebtedness. [Emphasis added.]
Based on our review of the language in the commercial security agreement and promissory note at issue, we conclude Standard had defaulted on the promissory note, thereby entitling Hibernia to utilize the provisions of La. R.S. 6:316 and apply the funds in account number 882141551 towards the payment of Standard’s indebtedness.
With regard to A & B Bolt’s contention that Hibernia was required to not only place Standard in default, but also to offer notice of same to Standard in order for the bank’s rights under La. R.S. 6:316 to be perfected, we find no merit to this argument. As is clear from the language of La. R.S. 6:316, all that is required to trigger the provisions of this statute is that the “depositor should default under any loan ... in favor of the depository bank.” La. R.S. 6:316(C). Moreover, the notice requirement found in La. R.S. 6:316(D) does not, in our opinion, operate to nullify the depository bank’s right to the statutory sefofffi remedy if such notice is not provided. Rather, we conclude, the notice requirement is designed solely to absolve the depository bank of all liability to depositors or any other person as a result of *513 checks or drafts drawn on depositor’s accounts if notice is mailed by registered or certified mail within the prescribed time. See Guillot v. Union Bank, 617 So.2d 1343, 1346-1347 (La.App. 3 Cir.1993).[3]
As further support for our conclusion that Hibernia was entitled to the statutory setoff remedy set forth in La. R.S. 6:316, we are mindful of La.Code Civ. P. art. 2414, which provides, in pertinent part, as follows:
The clerk shall cause written notice of the filing of the garnishee’s answer to be served promptly upon the seizing creditor in the manner provided by Article 1314.
Unless the creditor files a contradictory motion traversing the answer of the garnishee within fifteen days after service upon him of the notice of the filing of the garnishee’s answer, any property of the judgment debtor in the possession of the garnishee and any indebtedness to the judgment debtor which the garnishee has not admitted holding or owing shall be released from seizure. [Emphasis added.]
According to the record herein, Hibernia filed its answers to A & B Bolt’s interrogatories on February 11, 2002, admitting it had in its possession Standard’s account, bearing account number 882141651, with a balance of $8,000.00. Hibernia maintained, however, it had a right of pledge against the funds pursuant to La. R.S. 6:316. A & B Bolt did not traverse these answers. Thus, even if A & B Bolt may have had a valid adverse claim to the funds in Standard’s account at Hibernia, this claim was effectively waived by A & B Bolt’s failure to traverse Hibernia’s answers. By operation of law, the seizure as it relates to these funds has become ipso facto released. See Kugle v. Hennessy, 29,235, p. 5 (La.App. 2 Cir. 2/28/97), 691 So.2d 236, 239, writ denied, 97-1098 (La.6/13/97), 695 So.2d 979; Allied Finance Company v. Rogers, 215 So.2d 400, 401 (La.App. 2 Cir.1968).
^CONCLUSION
For the above and foregoing reasons, we agree with the trial court’s conclusion that La. R.S. 6:316 authorized Hibernia to seize the funds in account number 882141551 and apply same towards payment of the delinquent debt owed by Standard. Accordingly, the trial court’s judgment is affirmed in all respects. Costs associated with this appeal are assessed against A & B Bolt and Supply, Inc.
AFFIRMED.

. Cal Dive International, Inc. ("Cal Dive”) was also named as a defendant in the initial petition filed by A & B Bolt, Cal Dive filed an exception raising the objection of no right or cause of action on April 29, 2002. There is nothing in the record to indicate whether this exception was ever ruled on by the trial court. Nonetheless, Cal Dive is not a party to the instant appeal.

. Although not addressed individually, all issues raised by A & B Bolt on appeal will be covered in this opinion.

. In so holding, we note the case of Chrysler Credit Corporation v. Whitney National Bank, 798 F.Supp. 1234 (E.D.La.1992), wherein the court held that in order to avail itself of the statutory setoff remedy provided in La. R.S. 6:316(C), the bank must comply with the notice requirement of La. R.S. 6:316(D) and provide the court with evidence of same. While we look to federal cases for guidance, these decisions are not binding on us. We do not agree with the Eastern District’s interpretation of the notice requirement of La. R.S. 6:316(D) and refuse to apply this reasoning to the instant case.