[No. 765-2.    Division Two.    June 25, 1973.]

H. M. JOHNSON *et al.*, *Appellants*, v. STAR IRON AND STEEL COMPANY, *Respondent.*

*Joseph D. Holmes* (of *Murray & Holmes*), for appellants.

*Leslie O. Stomsvik* and *Elvin J. Vandeberg* (of *Kane, Vandeberg & Hartinger*), for respondent.

PEARSON, C.J.—Plaintiffs appeal from a judgment dismissing their claim for compensation based on an alleged contract to provide financial assistance to defendant, Star Iron and Steel Company. They assign error to the trial

court's findings and conclusions that no contract was ever formed. For the reasons set out below, we affirm the judgment of dismissal.

The facts in this case illustrate a classic contract formation problem. Defendant, Star Iron, required short-term financing. In part, the company's financial problems were attributable to an unprofitable, wholly owned subsidiary, Star Marine. Plaintiff, Mr. Johnson, indicated his willingness to help the company obtain the needed credit. In a series of preliminary meetings, Mr. Johnson and his associate, Mr. Bangasser, discussed various financing options available to the company with its president, Charles Allen, and its vice-president, Robert Allen. These discussions ranged over a variety of topics, including the sale of the subsidiary, merger possibilities, and a public offer of equity stock in Star Iron. Plaintiffs also disclosed an indirect plan of financing based on the availability of approximately one million dollars from a New York source.

The parties focused their attention on the indirect financing plan and the negotiations became quite serious. The trial court's findings succinctly fill in the remaining details.

> Plaintiffs made a written offer to the defendant to assist the defendant in securing additional financing. The terms of the offer were contained in a letter written by the plaintiff, H. M. Johnson, to the defendant corporation dated September 29, 1969. [Finding 3.]
>
> By letter dated October 3, 1969, written to the plaintiff, H. M. Johnson, the defendant corporation indicated its willingness to accept the terms of the letter of September 29, 1969, subject to two conditions that were stated in the letter. [Finding 4.]
>
> On October 7, 1969, the plaintiff, Paul E. Bangasser, led the defendant corporation's principal officers to believe that further conditions might be required as a condition of securing financing for the defendant corporation. [Finding 5.]
>
> On October 8, 1969, the defendant corporation, through its agent, Robert Allen, withdrew their conditional acceptance of October 3, 1969, and terminated negotiations. By letter dated October 8, 1969, the plaintiff, H. M. John-

son, attempted to accept the conditions imposed by the defendant corporation in its letter of October 3, 1969, but the letter of the plaintiff was not mailed until October 9, 1969. [Finding 6.]

Based on these findings, the trial court concluded:

The letter of the defendant corporation dated October 3, 1969, containing conditions that the defendant corporation would require of the plaintiffs was a counter-offer and in legal effect a rejection of the written offer of the plaintiff dated September 29, 1969. The attempted acceptance of the defendant's counter-offer by the letter of the plaintiff, H. M. Johnson, dated October 8, 1969 was ineffective because the counter-offer of the defendant was withdrawn by the defendant prior to the mailing of the letter of acceptance by the plaintiffs. [Conclusion 1.]

Plaintiffs contend that defendant's October 3 letter was an acceptance and that the conditions did not materially vary the terms of the offer. Defendant's October 3 letter states, in part:

We agree to the arrangements and fees outlined in your letter of September 29, 1969, and our letter of September 26, 1969, with the following exceptions:

*Reference: Your letter of September 29, 1969.*

Paragraph 3, line 3 and 4: ". . . local bank of our choice" shall be *changed* to read Bank of Tacoma.[1]

Paragraph 5: reference to Star Marine Industries, Inc.,

[1]This change referred to paragraph 3 of plaintiff's letter of September 29, 1969, which provided: "We are pleased to report that the E. Laurence Weisman Company, New York, has verbally agreed, subject to the usual reservations, to provide as soon as it can be prudently expedited, $500,000.00 cash in the form of 'bank book deposits' with a local bank of our choice. The term will be for one year with options to renew. With these funds on deposit the local bank can obtain four times this amount from the Federal Reserve Bank, thus the local bank increases its lending funds by two million dollars. The local bank would agree to pay its highest rate for deposit funds (bank book depositors), estimated at 5½ to 6% per annum. Before we allow the bank book depositors to place their funds in the local bank, this bank must agree to use or provide up to one million dollars of the new funds so generated for the use of Star Iron and Star Marine, in the form of normal line-of-credit loans at prevailing terms and conditions. We assume Star would borrow said funds at 8½ or 9% from the local bank, depending on prevailing rates."

shall be *deleted*. This we believe should be the subject of further discussion and a separate agreement.[2]

(Italics ours.)

■ It is axiomatic that an expression of assent that changes the terms of an offer in any material respect may operate as a counteroffer, but is not an acceptance. *Blue Mountain Constr. Co. v. Grant County School Dist. 150-204,* 49 Wn.2d 685, 306 P.2d 209 (1957). The issue then raised is whether the exceptions noted above were *material* modifications of the offer.

■ In *Northwest Properties Agency, Inc. v. McGhee,* 1 Wn. App. 305, 312, 462 P.2d 249 (1969), this court held that if a "condition *added* by the intended acceptance can be implied in the original offer, then it does not constitute a material variance so as to make the acceptance ineffective." (Italics ours.) Otherwise, the condition is a material variance. In our view, this principle applies equally to variances in the acceptance that would change terms of the offer. Using this test, the change in paragraph 3 was clearly material.

The modification of paragraph 3 meant that the plaintiffs' performance would be entirely dependent on the willingness of the Bank of Tacoma to extend credit on the basis of a plan which had been worked out in the bank's absence. The original offer gave plaintiffs the option of completing their performance through any local bank. The limitation on the scope of performance effected by the alteration of

---

[2]This change referred to paragraph 5 of plaintiff's letter of September 29, 1969, which stated: "If and when we arrange this financing or other financing on terms and conditions acceptable to you then our compensation shall be an amount equal to 5% as provided in your Letter Agreement of September 26, 1969. For a reasonable and mutually agreeable period of time you are to grant me the right but not the obligation to purchase Star Marine Industries, Inc. at the book value on the books of Star Iron & Steel Co., payable on terms and conditions that are mutually agreeable between the parties to permit maximum growth by Star Marine Industries, Inc. If merited and mutually agreeable all or some of the fees Star Iron would be obligated to pay me and/or my associates in cash may be in the form of reducing the price of Star Marine's indebtedness to Star Iron. To be valid such an option should be properly prepared and duly executed."

paragraph 3 in the purported acceptance does not even remotely resemble the scope of performance afforded by the terms of the original offer. Consequently, the paragraph 3 revision must be characterized as a material variance.

Turning now to the paragraph 5 change, a different problem is presented. By paragraph 5, plaintiffs sought an option to purchase the subsidiary corporation on terms to be negotiated in the near future. Since the duration of the option, as well as the terms and conditions of payment, were omitted, the paragraph is patently ambiguous. *See Peoples Mortgage Co. v. Vista View Builders,* 6 Wn. App. 744, 496 P.2d 354 (1972).

If this proposed option were intended by plaintiffs as a necessary and integral part of the offer to obtain financing, it would render the entire offer too indefinite to be capable of acceptance. An agreement to negotiate a contract in the future is nothing more than negotiations. *See Sandeman v. Sayres,* 50 Wn.2d 539, 314 P.2d 428 (1957). It appears self-evident that before a proposal can ripen into a contract, upon the exercise of the power of acceptance by the one to whom it is made, it must be definite enough so that when it is coupled with the acceptance it can be determined, with at least a reasonable degree of certainty, what the nature and extent of the obligation is which the proposer has assumed. Otherwise, no basis would exist for determining liability.

On the other hand, if, as plaintiff contends, paragraph 5 was purely collateral to the offer to obtain financing, and was simply a request to negotiate on a matter totally unrelated to the offer to obtain financing, then it is arguable that the deletion of the paragraph by defendant's purported acceptance would not constitute a material variance.

The proposed option was included in the paragraph of the offer which contained the proposed commission amount. The language used does not appear to separate the two separate subject matters. In fact, the cash commission provision was actually incorporated into the discussion of the proposed option. Each of the proposed subject matters

was discussed in terms of the other, so that it could be objectively said that they were inseparable.

Under these circumstances, a reasonable person in the position of the offeree (defendant) would be justified in believing the two subject matters inseparable and the deletion would consequently be an objectively material variance, as the trial court found.

At the very least, the offer was ambiguous to the extent that no mutual assent was possible by the acceptance made. For these reasons, we conclude that no contract came into existence as a result of defendant's letter of October 3, 1969.

We have thoroughly reviewed the record and conclude that the remaining findings are supported by substantial evidence and the conclusions follow from these findings. *Lanning v. Poulsbo Rural Tel. Ass'n,* 8 Wn. App. 402, 507 P.2d 1218 (1973). Since no contract was ever formed, plaintiffs' arguments based on the theory of unilateral rescission of an existing contract need not be considered.

Judgment affirmed.

PETRIE and ARMSTRONG, JJ., concur.