**Larry HARMON, Plaintiff and Appellant,**

v.

**Steven GREENWOOD, d/b/a Greenwood Service, Defendant and Respondent.**

**No. 15860.**

Supreme Court of Utah.

May 21, 1979.

the court determined no contract or partnership to have existed between the parties. Defendant cross-appeals from the dismissal of his counterclaim. We affirm. No costs awarded.

In 1966, plaintiff (Harmon) became a part-time employee of Greenwood Service, a sole proprietorship owned and operated by defendant (Greenwood) in Nephi, Utah. Greenwood Service began as a tire service, but expanded to a GM automobile dealership in 1970. In 1968, Harmon became a full-time employee, and he and Greenwood discussed the possibility that Harmon would later obtain an ownership interest in the business. Pursuant to these discussions, the parties talked to a lawyer and signed the following document drafted by him:

### LETTER OF INTENT

KNOW ALL MEN BY THESE PRESENTS,

That the undersigned do hereby commit themselves to the intention, on January 1, 1971, of entering formal agreements to effect the following:

1. To execute a Buy-Sell agreement covering 50% of the business and assets known as Greenwood Service.

2. To form a corporation as the business structure for said Greenwood Service following said sales agreement.

3. Included in the assets of said Greenwood Service at the date of said sales agreement will be sufficient to make it a well operated, functioning unit, having asset value, not including good will, of approximately $60,000.00 at fair market value.

4. Interest on the unpaid principal balance shall be determined on said date at the then going F.H.A. rate.

5. At the time of said sale each of the parties will set their wages on an equal basis.

6. The buyer shall pay seller from buyer's share of the business profits earned after said agreement.

7. The company will rent the property in which and on which the business oper-

Dave McMullin, Payson, for plaintiff and appellant.

Jackson B. Howard, Provo, for defendant and respondent.

MAUGHAN, Justice:

In this case plaintiff appeals from a judgment below in favor of defendant, in which

ates from the owner at a sum of $300.00 per month, being based on the present physical facility.

Dated this _____ day of March, 1968.

/s/ Larry Harmon

Buyer

/s/ Steve Greenwood

Seller

Harmon continued to work for Greenwood, and in late 1970 and 1971, they again had several discussions concerning Harmon's future ownership position. Harmon testified he repeatedly requested Greenwood to "consummate the paperwork to the partnership", but that Greenwood procrastinated, stating there was "no hurry".

Although no formal agreements were ever signed by the parties, Harmon claims a partnership in fact existed after 1970. In support of this, he points out that in 1971 his salary was increased, and he was allowed to charge gasoline to the company. He was given a car and a pickup truck for personal use, and the company began to pay all of his health insurance and his income taxes. Harmon testified that on several occasions after 1971, Greenwood introduced him to others as a "partner" in the business. An advertisement for Greenwood Service in the Nephi newspaper containing a picture of all employees, including Harmon, stated he was "going to be made a partner". Harmon also testified his name was put on the "drawing account" for accounting purposes, and that Greenwood allowed him to hire and fire some employees.

Greenwood testified he intended to make Harmon a partner if he continued to do well, but that he was not ready to do so before 1974. He testified that Harmon was manager of the tire department, and therefore entitled to charge gasoline as were his other department heads. He also testified his other department heads were given the use of automobiles, and given other types of benefits. Harmon was never shown on any reports or financial statements to GM or the government, and the accountant for the company testified he put Harmon's name on the drawing account merely out of convenience, for his own reasons. Greenwood

denied ever having introduced Harmon as a partner, but admitted he had stated Harmon would become a partner in the future. With respect to the newspaper advertisement, he testified each employee had composed a short "resume" of himself to be included in the advertisement, and Harmon had drafted the statements about himself without his authorization. Greenwood stated Harmon had never been paid any profits from the Nephi business, nor had he signed any checks or financing documents. It is clear Harmon made no payment of any kind toward the purchase of an interest in the business.

In 1974, the parties talked to another attorney and a pre-incorporation agreement was drafted. Harmon could not agree to the provision which called for him to become an owner in 1976, however, and the agreement was never signed.

In October 1974, Harmon filed this action, alleging: 1) the parties had entered into a binding contract in 1968 by the Letter of Intent and oral discussions; and 2) the parties had an actual partnership in fact despite the absence of a formal agreement. Greenwood counterclaimed for damages due to Harmon's alleged wrongful solicitation of customers prior to his leaving to establish a competing business.

The district court found there was no meeting of the minds concerning the establishment of any business entity and no partnership in fact existed. The issues of the counterclaim were reserved to be tried at a later date.

Approximately one year after judgment for Greenwood was entered, a trial was scheduled for the issues of the counterclaim. Greenwood indicated shortly before trial that he would put on no evidence, and moved to dismiss his counterclaim without prejudice. The court, after a hearing on the matter, dismissed the counterclaim with prejudice.

■ We hold the district court was correct in its determination that no contract existed between the parties. In *Valcarce v. Bitters,* 12 Utah 2d 61, 362 P.2d 427, 428 (1961), this court stated:

A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced.

This basic principle of contract law, when applied to the circumstances of the negotiations between the parties, requires the conclusion made by the district court. The Letter of Intent, quoted above, is not by itself an enforceable contract. Nowhere in its forms are any binding promises even made; it is precisely what it purports to be, a letter indicating the intention of the parties to enter into, at a later time, a binding agreement The letter is a variation of what is often called an "agreement to agree". Such "agreements to agree" are generally unenforceable because they leave open material terms for future consideration, and the courts cannot create these terms for the parties.[1] Here, the parties simply committed themselves *to the intention of entering into an agreement at a later time.* The letter set out certain goals of that later agreement, including the formation of a corporation. But the letter itself is not a binding agreement to create any business entity jointly owned by the parties, and indeed, even if it could be so construed, it is woefully lacking in the requisite specificity required for judicial enforcement. As we stated in *Valcarce,* ". . . where there was simply some nebulous notion in the air that a contract might be entered in the future, the court cannot fabricate the kind of contract the parties ought to have made and enforce it." [2]

The district court also found, on the basis of disputed evidence, that the oral discussions did not elevate the negotiations to the level of an enforceable contract, and sufficient evidence exists to support that finding.

The evidence in the record fails to support Harmon's contention that a partnership in fact existed at any time. The evidence as outlined above clearly indicates the parties intended to create some form of jointly-owned entity, but that they never actually accomplished that goal. Harmon's assertions that he was introduced as a partner were denied by Greenwood, and the other examples of his treatment as a partner such as his ability to charge gas or hire and fire employees were extended to other department heads, and do not evidence a partnership status. Harmon never received any profits from the Nephi business, as would a partner. Utah Code Ann., 1953 § 48–1–3 provides a statutory definition of a partnership, as follows: "A partnership is an association of two or more persons to carry on as co-owners [of] a business for profit." The evidence presented by Harmon does not establish he was in fact a co-owner of the business, and we therefore affirm the judgment of the district court.

█ Defendant contends in his cross-appeal the district court abused its discretion in dismissing his counterclaim with prejudice. We disagree. After judgment was entered against Harmon in May 1977, the court extended his time of appeal until after the resolution of Greenwood's counterclaim. Trial on the counterclaim was later set for April 6, 1978, almost one year later. Shortly before trial, Greenwood indicated to the court he would not put on evidence at the scheduled trial, and moved to dismiss without prejudice. In his statement of points on cross-appeal, Greenwood asserts this was done in the interest of judicial economy, since another trial would possibly occur if the Supreme Court remanded the case and he could then present evidence on his counterclaim at that time. The district court did not explain its reasons for dismissing the counterclaim with prejudice, but it appears that Greenwood made the same argument to the district court as he makes before this court. We note that Greenwood was aware immediately after the judgment

**1.** *Johnson v. Star Iron and Steel Co.,* 9 Wash. App. 202, 511 P.2d 1370 (1973); *Chu v. Ronstadt,* 17 Ariz.App. 486, 498 P.2d 560 (1972); 17 Am.Jur.2d 362, *Contracts,* § 26.

**2.** 362 P.2d at 428; See also *Reed v. Montgomery,* 180 Or. 196, 175 P.2d 986 (1947).

in 1977 that Harmon intended to appeal. Greenwood provides no reason why he delayed almost one year before requesting a dismissal without prejudice and we, like the trial court, are unconvinced that a further delay in this case is necessary in the interest of justice. Greenwood has had sufficient opportunity to present evidence on his counterclaim, and no abuse of discretion exists under these circumstances by the dismissal.[3]

CROCKETT, C. J., and WILKINS, HALL and STEWART, JJ., concur.

---

**3.** See *Westinghouse Electric Supply Co., v. Paul W. Larsen, Contractor, Inc.,* Utah, 544 P.2d 876 (1975).