10 P.3d 371 (2000)
141 Wash.2d 670
Certification from the United States Court of Appeals for the Ninth Circuit in
Gary Dean BROAD, Denise Broad, husband and wife, Appellants,
v.
MANNESMANN ANLAGENBAU, A.G., Appellee.
No. 68804-4.
Supreme Court of Washington, En Banc.
Argued June 15, 2000.
Decided September 21, 2000.
*373 Nate D. Mannakee, Tacoma, Edwards, Sieh, Smith & Goodfriend, Howard Mark Goodfriend, Catherine Wright Smith, Seattle, for Appellants.
Peery, Hiscock, Pierson, James E. Horne, Seattle, Carrie M. Coppinger-Carter, Bellingham, for Appellee.
*372 MADSEN, J.
This case involves two questions certified by the Ninth Circuit Court of Appeals which relate to service of process under the Hague Convention:
1. "[W]hether state law deems a designated foreign central authority a `substitute' or `agent' for purposes of meeting Washington's 90-day time period for service of process," or;
2. "[A]lternatively, whether state law recognizes an exception to the 90-day time limit for service of process where plaintiffs must, under the Hague Convention, relinquish control over serving a defendant to a foreign central authority for an indefinite period of time."[1]
Broad v. Mannesmann Anlagenbau, A.G., 196 F.3d 1075, 1076 (9th Cir.1999). We hold that the central authority is not an agent of the defendant, but the 90-day period of RCW 4.16.170 should be extended once required documents are transmitted to the central authority, provided they are sent within 90 days of filing the complaint.

FACTS
Plaintiffs Gary Dean and Denise Broad brought this diversity action in the United States District Court for the Western District of Washington against Mannesmann Anlagenbau, AG, a German manufacturer, for damages allegedly sustained when Mr. Broad was injured demonstrating the Kingdome Mannesmann Facade Maintenance System.
Under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 [1969] (the Hague Convention), an international treaty to which the United States and Germany are signatories, each state is to designate a central authority to receive requests for service of process. Art. 2. Although the convention also provides for several alternative methods of service, it allows signatory countries to object to those methods. Germany has objected, and requires that plaintiffs who sue defendants in Germany must request that the designated central authority execute service of process. Art. 2; Annex, Footnote 7(a)(1). Germany also requires that all documents be translated into German. Annex, Footnote 7(a)(1). The designated central authority is solely responsible for serving the documents or having them served "by a method prescribed by [Germany's] internal law for the service of documents in domestic actions upon persons who are within its territory." Art. 5(a); see Annex, Footnote 7. Once service is perfected, the central authority must forward to the applicant a certificate stating that the document has been served, or, if it has not, giving the reasons which prevented service. Art. 6. The Hague Convention contains no time limits for service.
Under Washington law, if a complaint is filed where service has not preceded the filing of the complaint, the limitations period is tolled for 90 days for purposes of service *374 on the defendant. RCW 4.16.170.[2] If service is not effected by the end of the 90-day period, the action is deemed not commenced for purposes of the statute of limitations. RCW 4.16.170.
The United States Supreme Court has held that by virtue of the supremacy clause, U.S. Const. art. VI, the Hague Convention preempts inconsistent methods of service prescribed by state law in all cases to which the Hague Convention applies. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). The Hague Convention applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad." Art. 1.
Mr. Broad was injured on May 19, 1994. Mr. and Mrs. Broad filed their complaint and summons on May 16, 1997, at the end of the limitations period. They sent a request for service of process to the Bavarian State Ministry for Justice, the relevant central authority in Germany, on June 18, 1997. On July 14, 1997, the central authority sent a response in German that was received by plaintiffs on July 21, 1997. On July 23, they obtained an English translation, which told them they had to submit documents in German. Plaintiffs hired a German law firm to assist, and sent documents to that firm on July 31, 1997. On August 4, 1997, plaintiffs authorized the German firm to translate the documents and send them to the central authority. On September 24, 1997, the German firm informed plaintiffs that the central authority had forwarded the complaint and summons to a local court to serve the defendant. Neither the Ninth Circuit nor the parties state when the central authority actually received the documents in German; the respondent's brief says the record is silent on this point, and the limited record before this court does not contain this information. The certificate of service from the central authority states that defendant was served on September 18, 1997. Thus, the defendant was served 125 days[3] after the plaintiffs filed the complaint and summons.
The district court entered summary judgment of dismissal on the basis that the action was not commenced because the plaintiffs had not served the defendant within 90 days of filing the complaint and summons. Plaintiffs appealed. The Ninth Circuit concluded that the district court had failed to consider the tension between Washington law and the Hague Convention resulting from the Hague Convention's requirement that plaintiffs must relinquish control over service to a designated central authority for an indefinite time period. Accordingly, the Ninth Circuit has certified two questions seeking clarification of Washington law.

ANALYSIS
Initially, the defendant makes several arguments that go beyond the questions certified. The decision whether to answer a certified question pursuant to RCW 2.60 is within the discretion of the court. Hoffman v. Regence Blue Shield, 140 Wash.2d 121, 128, 991 P.2d 77 (2000); RAP 16.16(a). However, the court lacks jurisdiction to go beyond the question certified. Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 577, 964 P.2d 1173 (1998); Shumway v. Payne, 136 Wash.2d 383, 391, 964 P.2d 349 (1998). Where an issue is not within the certified questions, and is within the province of the federal court, this court will not reach the issue. See Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 78-79, 821 P.2d 18 (1991). The federal court retains jurisdiction over all matters except the local question certified. Lige Dickson Co. v. Union Oil Co., 96 Wash.2d 291, 294-95, 635 P.2d 103 (1981). Therefore, we address only those arguments necessary to answer the two certified questions.
1. Whether central authority is a substitute or agent for purposes of RCW 4.16.170.
*375 Plaintiffs argue that service on the central authority is effective substituted service on an agent of the defendant, and that the Hague Convention affirmatively provides for such service. They also rely on a number of cases involving substituted service which, plaintiffs urge, are consistent with a holding that timely service on a designated central authority as the agent of a defendant is effective.[4]
As noted, the Hague Convention preempts inconsistent state law where the convention applies. Under its terms, a request must be sent to the designated central authority in Germany for service upon a German defendant. The treaty's terms clearly dictate that the central authority cannot be an agent, contrary to plaintiffs' argument.
In construing treaties, the court begins with the text of the treaty and the context in which the written words are used. Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 534, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); Volkswagenwerk, 486 U.S. at 699, 108 S.Ct. 2104. Other general rules of construction may be applied where difficult or ambiguous terms are concerned. Eastern Airlines, 499 U.S. at 535, 111 S.Ct. 1489; Volkswagenwerk, 486 U.S. at 700, 108 S.Ct. 2104. Treaties are construed more liberally than private agreements, and a court may look to the history of the treaty, the negotiations, and the practical construction adopted by the parties. Eastern Airlines, 499 U.S. at 535, 111 S.Ct. 1489; Volkswagenwerk, 486 U.S. at 700, 108 S.Ct. 2104.
The Hague Convention is "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." Volkswagenwerk, 486 U.S. at 698, 108 S.Ct. 2104. The preamble of the treaty explains:
The States signatory to the present Convention,
Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,
Desiring to improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure,
Have resolved to conclude a Convention to this effect....
(Emphasis added.)[5] Article 1 states that the Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention shall not apply where the address of the person to be served with the document is not known." (Emphasis added.) Article 2 provides that each contracting state will designate a central authority to "receive requests for service ...." (Emphasis added.) Article 3 provides that "[t]he document to be served or a copy thereof shall be annexed to the request." (Emphasis added.) Article 5 states that "[t]he Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency...." (Emphasis added.) Article 6 states that the central authority shall complete a certificate stating that "the document has been served" or "set out the *376 reasons which have prevented service." (Emphasis added.)
The purposes and terms of the treaty are inconsistent with service on the central authority as an agent of the defendant. The Hague Convention clearly contemplates, and explicitly states, that the central authority itself serves the defendant, not that the central authority itself may be served.
Plaintiffs say, though, that like state statutes authorizing service on the Secretary of State, and requiring the Secretary of State to forward notice of service to the defendant, for example, RCW 46.64.040, the nonresident motorist statute, the Hague Convention provides that a central authority forward notice to the defendant. This claim is inconsistent with the terms of the treaty. The Hague Convention does not provide that the central authority merely forward notice to the defendant, but instead provides that the central authority actually serve the defendant or arrange to have the defendant actually served.
There are further difficulties with plaintiffs' argument. Each of the cases plaintiffs rely upon in support of their argument is distinguishable on the basis that a statute or court rule specifically allowed the method of service used in the case. In Martin v. Triol, 121 Wash.2d 135, 847 P.2d 471 (1993), service was made on the Secretary of State pursuant to the nonresident motorist statute, RCW 46.64.040. The court held that the 90-day tolling statute, RCW 4.16.170, applies where such substituted service is made. The case is distinguishable because the nonresident motorist statute specifically allows for service on the Secretary of State. In Crystal, China & Gold, Ltd. v. Factoria Ctr. Invs., Inc., 93 Wash.App. 606, 969 P.2d 1093 (1999), the corporation service of process statute at issue specifically allows for substituted service on the Secretary of State if a corporation's registered agent is unavailable, as the court concluded was the case there. In Jones v. Stebbins, 67 Wash.App. 896, 841 P.2d 791 (1992), aff'd 122 Wash.2d 471, 860 P.2d 1009 (1993), after finding that the defendant was concealing himself within the state, see RCW 4.28.100, on the last day of the 90-day tolling period the trial court authorized service by mail to the defendant's business address as allowed under CR 4(d)(4).
Plaintiffs' reliance on Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 815 P.2d 781 (1991) is also misplaced. There, the court held that under RCW 4.16.170 service on one defendant tolled the statute of limitations as to all defendants, including, in that case, a Swiss manufacturer. This holding resulted from construction of language in RCW 4.16.170: "If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally...." (Emphasis added.) The court added that the tolling as to other defendants was not unlimited, because a plaintiff would have to proceed with the case in a timely manner as required by court rules, and would have to serve each defendant in order to proceed against that defendant. 117 Wash.2d at 329, 815 P.2d 781.
None of these cases supports the proposition that in the absence of a statute or court rule, service on the central authority as an agent is effective service. There is no state statute or rule allowing service on the central authority as an agent of the defendant. As noted, the Hague Convention itself does not provide for such service, and instead precludes such service. We hold that where a plaintiff must serve a defendant abroad under the terms of the Hague Convention, Washington state law does not authorize substituted service of process on a designated central authority as an agent of the defendant.[6]
Plaintiffs say, though, that a plaintiff loses control over the timing of service under the Hague Convention, and urges that a defendant should not be able to rely on that lack of control to argue that the statute of limitations has run when a plaintiff has done what can be done to effect service. They contend that this is another reason why this court should hold that service on the designated central authority is sufficient. However, our answer to the second certified question resolves *377 this potential unfairness without a holding that contravenes the terms of the Hague Convention.
2. Extension of the 90-day period of RCW 4.16.170.
The second certified question is whether there is an exception to the 90-day rule of RCW 4.16.170 when service is out of a plaintiff's control because of the mandatory terms of the Hague Convention. As noted, another way to ask the question is whether the 90-day time period of RCW 4.16.170 should be extended once the necessary documents are transmitted to the central authority, provided that they are transmitted within the 90-day period. At least one intermediate appellate court has strictly construed a state statute establishing the period in which service must be performed in a case where the plaintiff maintained that the deadline was missed because of the difficulties of international service under the Hague Convention. Conservatorship of Prom v. Sumitomo Rubber Indus., Ltd., 224 Wis.2d 743, 756 n. 2, 592 N.W.2d 657 (Ct.App.), review denied, 228 Wis.2d 168, 599 N.W.2d 409 (1999). The plaintiffs in that case cited a journal article describing the Japanese central authority as taking on average two to three months to complete the service process. Id. (citing journal). The court acknowledged the harshness of the rule, but said it was bound by the state supreme court's conclusion that strict adherence to the statute was required. Id. In another jurisdiction, the problem is addressed by a statute which provides that if service cannot be made under an applicable treaty or convention within 60 days, the "court may, upon application, order service of process upon such terms as the court deems reasonably calculated to give the defendant actual notice ... in sufficient time to enable the defendant to defend." Conn. Gen.Stat. Ann. § 52-59(d) (West 2000) (Connecticut). Given preemption of the Hague Convention, however, the validity of this statute is doubtful.
In this case, the Ninth Circuit first suggests that the tolling provisions of RCW 4.16.180 might apply. Plaintiffs do not make this argument. RCW 4.16.180 provides that if a cause of action accrues against a nonresident, the action may be commenced "after the coming, or return" of the person to the state. However, this court has held that this statute should not be applied if the defendant can be served with process. Summerrise v. Stephens, 75 Wash.2d 808, 454 P.2d 224 (1969). There is no longer any need for tolling based upon the inability to obtain personal service on the defendant because of the defendant's absence from the state. Id. at 812, 454 P.2d 224. Here, the Hague Convention provides for service of process, and therefore RCW 4.16.180 does not apply.
Plaintiffs argue that because process cannot be served in this case except through the designated central authority, commencement of this action should be tolled under RCW 4.16.230. That statute provides in relevant part that "[w]hen the commencement of an action is stayed by ... a statutory prohibition, the time of the ... prohibition shall not be a part of the time limited for the commencement of the action." This statute has been strictly construed in the past to require a statutory prohibition. See Winston v. Richard W. Wines, Inc., 56 Wash.2d 192, 193-94, 351 P.2d 929 (1960). However, in Seamans v. Walgren, 82 Wash.2d 771, 775, 514 P.2d 166 (1973), the court relied on this statute as supporting a holding that
[w]hen a person is prevented from exercising his legal remedy by some positive rule of law, the time during which he is prevented from bringing suit is not to be counted against him in determining whether the statute of limitations has barred his right even though the statute makes no specific exception in his favor in such cases.
See also Barbo v. Nooksack Valley Sch. Dist., 16 Wash.App. 371, 556 P.2d 245 (1976) (citing Seamans when holding that the school district's failure to appoint a clerk of the district tolled the 10-day period in which a notice of an appeal had to be served on the clerk). The court in Seamans did not say that RCW 4.16.230 directly controlled, instead reasoning that "[a]lthough generally exceptions to a statute of limitations will not be implied, nevertheless where there is an inability to bring a lawsuit this rule is not applied and exceptions are created." Seamans, 82 *378 Wash.2d at 775, 514 P.2d 166. The court then said this policy is reflected in RCW 4.16.230. Id.
Seamans is unlike the present case in a key respect. There, the defendant was a member of the Legislature, and the statute of limitations was tolled for the period of time the Legislature was in session and a stated period before the legislative session, because a state legislator is immune from service of process under the state constitution. However, when the period of immunity was added to the limitations period, both the filing of the complaint and service of process occurred within the limitations period. As the court noted, RCW 4.16.170 therefore did not apply. Seamans, 82 Wash.2d at 775, 514 P.2d 166.
Here, the action was tentatively commenced within the limitations period, but service did not occur within that period. Instead, plaintiffs sought to utilize the 90-day period of RCW 4.16.170 to effect service. Thus, as the Ninth Circuit recognized when framing the second certified question, the question here is whether there should be an exception to the 90-day period to serve the defendant, in effect an extension or "tolling" of the 90-day period itself, provided that the necessary documents are transmitted within the 90-day period. Neither Seamans nor RCW 4.16.170 speaks to the question.
However, we conclude that the principle underlying Seamans applies in this case. While the Hague Convention provides procedures for serving a foreign defendant abroad, the central authority is responsible for serving or for having the documents actually served. Once the necessary documents are transmitted to the central authority, the timing of service is out of a plaintiff's control. Service thus may be effected after a state statute of limitations runs. In Marschauser v. Travelers Indem. Co., 145 F.R.D. 605 (S.D.Fla.1992), for example, Israel's central authority had not sent the required certificate indicating whether service had been made on one of the defendants nearly nine months after receiving the request for service abroad. Also, the French central authority took over six weeks to serve the defendants, as noted in the unpublished opinion of Greene v. Le Dorze, 1998 WL 158632 (N.D.Tex.1998). The Hague Convention stands as a positive rule of law which could prevent timely commencement of suit.
Because the plaintiff lacks control over the timing of service once the documents are transmitted to a designated central authority, we hold that the analysis of Seamans and the policy underlying RCW 4.16.230 applies to toll the statute of limitations once the necessary documents are sent to the central authority, provided they are transmitted within the 90-day period of RCW 4.16.170.
While this issue is of first impression, we note that dicta in Kiehn v. Nelsen's Tire Co., 45 Wash.App. 291, 724 P.2d 434 (1986) is consistent with extension of the 90-day period of RCW 4.16.170 once necessary documents have been transmitted to a designated central authority under the Hague Convention. In Kiehn, the Court of Appeals held that suit was not commenced against Nelsen's Tire because it was not named as a party until after the statute of limitations had run, and an amended complaint naming this defendant did not relate back to the date the complaint was originally filed. The plaintiff also argued that because a petition in bankruptcy was filed against Nelsen's Tire within 90 days of the time the original complaint was filed, under RCW 4.16.170 the bankruptcy stay tolled the statute of limitations. Id. at 296-97, 724 P.2d 434. The court rejected the argument because the 90-day period is not an extension of the statute of limitations, but instead applies where a plaintiff has tentatively commenced an action; it allows time to perfect commencement after the statute of limitations runs so long as it is within 90 days of tentative commencement. Id. at 297-98, 724 P.2d 434. Because no action was tentatively commenced against the defendant within the limitations period either by the original complaint or by an amended complaint that related back, RCW 4.16.170 did not apply in the case. Kiehn, 45 Wash.App. at 298, 724 P.2d 434.
The court noted in dicta, though, that under the federal bankruptcy statute filing a complaint, as well as issuance of process, against a bankrupt violates the automatic stay provisions. Kiehn, 45 Wash.App. at *379 297, 724 P.2d 434. Therefore, the court reasoned, "if the action could have been commenced against Nelsen's tire by effecting service of process within 90 days of filing, as provided by RCW 4.16.170, the stay resulting from a bankruptcy proceeding occurring within that period would indeed have tolled the running of the statute of limitations." Id. Thus, the court appropriately recognized that if federal law had prevented service where suit had been tentatively commenced, the 90-day period of RCW 4.16.170 would have been extended and the limitations period tolled for that additional time.
The defendant says, however, that here the failure to timely effect service was not due to relinquishment of control over service to the central authority, but rather to plaintiffs' delay in filing their complaint and in transmitting translated documents to the Bavarian State Ministry of Justice. Insofar as there is a fact question as to when translated documents were transmitted, the question is beyond the jurisdiction of this court. However, as to delay in filing the complaint and in attempting to serve the defendant, this court has expressly held that a plaintiff has the full period of the limitations period to tentatively commence an action, and the full 90-day period of RCW 4.16.170 to perfect service. Martin, 121 Wash.2d at 150-51, 847 P.2d 471.
Of course, once documents are transmitted to a designated central authority, some additional time will pass before service is actually effected, because the central authority will either have to serve the defendant or arrange to have the defendant served. However, the particular procedures employed in signatory countries may vary, and how and when service will ultimately be effected is uncertain. Allowing an exception to the 90-day limit once necessary documents are transmitted to the central authority provides a clear rule without unfairness to defendants who are protected by the terms of the treaty.
The next question is whether the plaintiffs' transmission of untranslated documents should toll the statute of limitations. The Hague Convention explicitly requires that documents sent to a German central authority must be translated into the German language. The failure to provide untranslated documents to a German central authority violates the terms of the treaty, and courts have held such attempts insufficient under the convention. Vorhees v. Fischer & Krecke, 697 F.2d 574 (1983); Teknekron Management, Inc. v. Quante Fernmeldetechnik, 115 F.R.D. 175 (1987); Rivers v. Stihl, Inc., 434 So.2d 766, 769-70 (Ala. 1983). We conclude that the failure to transmit the required translated documents precludes application of any extension of the 90-day period (and further tolling of the limitations period) as a matter of law. However, once documents complying with the terms of the Hague Convention have been transmitted to a designated central authority within the 90 days allowed by RCW 4.16.170, the time period is tolled.[7]
Next, the plaintiffs argued to the Ninth Circuit that a "good cause" tolling exception should apply, but that court noted that the Court of Appeals has held that there is no exception for "good cause." Broad, 196 F.3d at 1078 (citing Fisher v. Tacoma, 70 Wash. App. 635, 855 P.2d 299, 302 (1993)). Although plaintiffs do not make such an argument before this court, the Ninth Circuit's second certified question is broad enough to encompass the question. However, in light of our holding that further tolling is appropriate under Seamans and the policy expressed in RCW 4.16.230, it is unnecessary to consider whether a "good cause" exception should exist. We note, though, that there is no "good cause" exception in any relevant statute or court rule, as exists in some other jurisdictions. See, e.g., Fla. R. Civ. P. 1.070(j) (West 2000) (120-day period in which to serve process, unless good cause shown). Also, a good cause exception would, most likely, have broader application than just to the circumstances in this case.[8]

*380 CONCLUSION
We answer the first certified question "no," and hold that under state law transmittal of documents to a designated central authority pursuant to the Hague Convention for service of process is not substituted service on an agent of the defendant. We answer the second certified question "yes," and hold that the 90-day period of RCW 4.16.170 is extended and the statute of limitations further tolled once the necessary complying documents are transmitted to the designated central authority for service on the defendant, provided they are transmitted within 90 days of filing the complaint.
GUY, C.J., SMITH, JOHNSON, ALEXANDER, TALMADGE, SANDERS, IRELAND, and BRIDGE, JJ., concur.
NOTES
[1] The Ninth Circuit frames the question in terms of an exception to the 90-day limit of RCW 4.16.170. An alternative is to ask whether the 90-day period of the statute should be extended once the necessary documents are transmitted to the central authority, provided they are transmitted within 90 days of filing the complaint.
[2] CR 3(a) and (b) refer to RCW 4.16.170 for tolling.
[3] The plaintiffs and the defendant agree on 125 days, which appears correct. See CR 6. The Ninth Circuit said that service was effected 122 days after the complaint was filed. 196 F.3d at 1077. The district court said that service was effected 132 days after the complaint was filed.
[4] They say that such service is effective to "toll" the statute of limitations. This is an erroneous characterization of substitute service statutes. Where substituted service on a statutory agent is made in accord with the requirements of a statute, it is effective service  no further tolling is needed. See generally 14 Lewis H. Orland & Karl B. Tegland, Washington Practice: Trial Practice Civil §§ 102(5), 105(2), 108(3), 109(2), (3) (5th ed.1996) (discussing service on statutory agents in various contexts). Provisions tolling the statute of limitations generally apply where service is difficult or impossible. See generally 15 Lewis H. Orland & Karl B. Tegland, Washington Practice: Trial Practice Civil §§ 422-428 (5th ed.1996) (discussing various tolling provisions). Plaintiffs' arguments can be addressed without treating the first certified question as a tolling question.
[5] The treaty is not a long-arm device providing for independent authorization for service abroad. Gary A. Magnarini, Comment, Service of Process Abroad Under the Hague Convention, 71 Marq. L.Rev. 649, 665 (1998). Instead, it provides for methods of service when a state long-arm statute or a federal statute authorizes service abroad. Id. Also, jurisdiction of the defendant must be established independent of the convention. Id.
[6] In light of this holding, we do not address the Broad's contentions related to due or reasonable diligence before substituted service may be made.
[7] Plaintiffs' argument, though, that service was out of their control once they instructed the German firm to translate and forward the documents to the central authority is unpersuasive.

The choice of a translator, and control over the translator, lies with the plaintiff.
[8] We note that the Court of Appeals has reasoned that finding a "good cause" suspension of the limitations period would encroach on the Legislature's power. See Patrick v. DeYoung, 45 Wash.App. 103, 108, 724 P.2d 1064 (1986), overruled on other grounds by Sidis, 117 Wash.2d 325, 815 P.2d 781.