KEYSTONE LAND & DEVELOP-
MENT COMPANY, Plaintiff–
counter–defendant–Appellant,

v.

XEROX CORPORATION, Defendant–
counter–claimant–Appellee.

No. 02–35847.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed Dec. 31, 2003.

Eric C. Frimodt, Esq., Inslee Best Doezie & Ryder, Bellevue, WA, for Plaintiff-counter–defendant–Appellant.

Larry J. Smith, Esq., Graham & Dunn PC, Seattle, WA, for Defendant–counter-claimant–Appellee.

Before TROTT, FISHER, and GOULD, Circuit Judges.

GOULD, Circuit Judge.

This diversity case arises from a contract dispute. Plaintiff Keystone Land & Development Company ("Keystone") claims that it formed two binding contracts with Defendant Xerox Corporation ("Xerox"): a contract to buy a building owned by Xerox, and a contract to negotiate the terms of a Purchase and Sale Agreement for that building. Keystone filed suit for breach of contract in Washington state court and, to secure its claims, Keystone filed a *lis pendens* notice for the property. Xerox removed the case to federal court and filed a counterclaim for damages, and attorney's fees, caused by an allegedly improper *lis pendens*. The district court granted summary judgment to Xerox on its defense of the two contract claims asserted by Keystone, and also granted summary judgment to Xerox on its counterclaim. Keystone appealed these rulings. We had jurisdiction pursuant to 28 U.S.C. § 1291. In an opinion filed concurrently with this order, we affirmed the summary judgment dismissing Keystone's claim of a breach of contract to sell the building, and we reversed the summary judgment awarding damages to Xerox because of the *lis pendens*. This order certifies to the Washington State Supreme Court the remaining dispositive [1] question of state law before us, namely, whether Washington law may recognize a contract to negotiate in the circumstances presented by this appeal.

**I**

Before turning to the issue to be certified, we provide the following summary of facts. In early 2001, Xerox decided to sell and leaseback its facility in Tukwila, Washington. Xerox hired Jones Lang LaSalle ("Jones Lang") and Kidder Matthews and Sanger ("Kidder Matthews") to sell the property. Xerox sent detailed information packets to prospective buyers, including Keystone. In a February 22, 2001 e-mail, Xerox requested a "signed Letter of Intent which includes the net purchase price and key deal points . . . ." Keystone, through its real estate broker, Broderick Group, sent a letter (the "Offer Letter") dated March 8, 2001, that made an "Offer to Purchase" the property. The letter had several contingencies, including the "Execution of a Purchase and Sale Agreement with [sic] thirty (30) days from the execution of this letter of intent." Kidder Matthews replied on April 4, 2001, thanking Keystone for the "Offer" and, as "directed by Xerox," requested that Keystone submit a "final and best offer" for the property that addressed certain concerns. Keystone responded through a letter dated April 6, 2001 by

---

**1.** We conclude that whether a trial on the remaining contract claim in this case is necessary depends entirely upon the answer provided by the Washington State Supreme Court. The answer to our certified question is "necessary . . . to dispose of [our] proceedings." Wash. Rev.Code. § 2.60.020.

increasing its offering price. Referencing the March 8 letter, the April 6 letter stated that Keystone was "prepared to proceed towards completion of a mutually acceptable Purchase and Sale Agreement." In an April 10 letter, Xerox's local brokers wrote that, subject to two modifications, Xerox was "prepared to negotiate a Purchase and Sale Agreement with Keystone," and that Xerox would "proceed immediately to draft" the Agreement if Keystone accepted the modifications. Keystone accepted the modifications on April 13.

Keystone prepared to inspect the property and Xerox's books and records concerning the property, reviewed documents, and arranged debt and equity financing. Xerox delivered documents to Keystone and hired legal counsel for drafting the Agreement. Xerox told Keystone that a draft was almost complete and would soon be ready for review. To this point, no employee of Keystone had discussed the transaction directly with any employee of Xerox; all communications were between the parties' brokers. Xerox commenced its due diligence review. Because Xerox had seen other prospective property sales collapse when lenders had backed out after learning that the deal included a leaseback to Xerox, it requested assurances from Keystone's lenders that financing would be available. Faced with vague answers from Keystone's financier, a Key Bank officer, Xerox became concerned about Keystone's suitability as purchaser and landlord. On April 25, 2001, the City of Tukwila, the main competitor of Keystone for the property, submitted a revised proposal to buy the building for $500,000 more than Keystone offered. Xerox then decided to withdraw from negotiations with Keystone.

That was the end of negotiations between Keystone and Xerox.

Keystone filed suit in state court on June 20, 2001 and recorded a *lis pendens* against the Tukwila facility. The action was removed by Xerox to the United States District Court for the Western District of Washington. Xerox filed a Fed. R.Civ.P. 12(b)(6) motion, asserting that the complaint did not state a claim. That motion was denied. Xerox then filed an answer on October 4, 2001, and added a counterclaim for damages from the *lis pendens* filing. Keystone released the *lis pendens* when it filed an amended complaint on January 18, 2002. On cross-motions for summary judgment, the district court granted Xerox's motion for summary judgment in defense of Keystone's suit on March 14, 2002. On July 12, 2002, the district court, addressing cross-motions for summary judgment on Xerox's counter-claim, awarded summary judgment to Xerox. The district court certified both orders as final and Keystone appealed both summary judgment orders.

In an opinion accompanying this order, we have affirmed summary judgment for Xerox on Keystone's claim of breach of contract to sell the Tukwila building. In the same opinion, we reversed summary judgment for Xerox on the *lis pendens* counterclaim and ordered summary judgment for Keystone. We have deferred decision on the appeal of Keystone challenging the district court's grant of summary judgment rejecting Keystone's claim of breach of contract to negotiate.

**II**

We turn to the issue that is the basis of our certification order:[2] whether Wash-

2. Even though this course of action was not suggested by either party, we may properly certify this question sua sponte. *See* Wash. Rev.Code § 2.60.030(1) ("[c]ertification procedure may be invoked by a federal court upon its own motion...."); *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist., No. 1*, 294 F.3d 1085, 1086 (9th Cir.2002) (ordering certification sua sponte).

ington law recognizes a contract to negotiate. We certify this question because we conclude that the Washington State Supreme Court has not yet answered definitively whether a contract to negotiate can be enforceable in the circumstances presented in this case.

On the one hand, arguing against the possibility of an agreement to negotiate a future contract, Washington courts have held explicitly that "[a]n agreement to negotiate a contract in the future is nothing more than negotiations." *Pacific Cascade Corp. v. Nimmer,* 25 Wash.App. 552, 556, 608 P.2d 266 (1980) (citing *Johnson v. Star Iron & Steel Co.,* 9 Wash.App. 202, 206, 511 P.2d 1370 (1973)). *Johnson,* in turn, cites *Sandeman v. Sayres,* 50 Wash.2d 539, 314 P.2d 428 (1957) for its holding. *Sandeman* includes a statement that, "an agreement for an agreement, or in other words, an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete is unenforcible [sic]." *Id.* at 541–42, 314 P.2d 428. If we take this language from *Sandeman* literally, it might be read to preclude Keystone's claim of breach of contract to negotiate. That agreement might be viewed as requiring some further meeting of the minds to reach an agreement that is enforceable.

But our analysis of *Sandeman* suggests to us that the answer we set forth above is not necessarily conclusive. *Sandeman* did not precisely reject contracts for negotiation. The *Sandeman* language that we cite above, to the effect that there can be no enforceable "agreement to do something which requires a further meeting of the minds of the parties," *id.,* is ambiguous as applied to an agreement to negotiate. The *Sandeman* language might be interpreted to preclude using a contract to negotiate to enforce the incomplete substantive contract, but need not necessarily be read to preclude enforcing a contract to negotiate, with nothing enforced except a duty to negotiate in good faith.

There is also some affirmative authority that, at least when a contract has been formed, Washington courts have recognized that there can be a contractual obligation to negotiate further agreements in good faith. *See, e.g., Family Medical Bldg., Inc. v. Dept. of Soc. and Health Servs.,* 37 Wash.App. 662, 667 & n. 2, 684 P.2d 77 (1984) ("[t]hat is, G.A. had a duty to make a good faith effort to negotiate a rental and a duty to determine in good faith if the rate was acceptable ... there was [a promise by the G.A.] to agree to an acceptable rate."), *aff'd in part on this ground, rev'd in part on other grounds,* 104 Wash.2d 105, 702 P.2d 459 (1985). And the concept of a contract to negotiate has been explicitly recognized by a concurring opinion from the Washington Supreme Court. *See Hedges v. Hurd,* 47 Wash.2d 683, 689, 289 P.2d 706 (1955) (Hill, J., concurring) ("It is my view that, as a result of such an earnest-money receipt and agreement, there is an implied agreement between the seller and the purchaser that they will negotiate in good faith the terms of the executory real-estate contract contemplated by the agreement ... In the present case, appellant refused even to attempt to negotiate the executory real-estate contract contemplated by the agreement, and thereby she breached the contract she had made....").

A recent case addresses the subject, but in our view is also not conclusive. In *Badgett v. Sec. State Bank,* 116 Wash.2d 563, 807 P.2d 356 (1991), the plaintiffs sued the bank for damages for not renegotiating or restructuring their loan. Because there was no "express term in the loan agreement [that] required the Bank to consider [the plaintiffs'] proposal," *id.* at 569, 807 P.2d 356, the bank had no good faith duty to consider the proposal, because the duty

of good faith "arises only in connection with terms agreed to by the parties." *Id.* Because the "loan agreement did not obligate the bank to consider the [plaintiffs'] proposal," there was no breach of the duty of good faith when the bank did not consider the proposal. *Id.* at 574, 807 P.2d 356. Keystone urges that this reasoning implies that if the contract did contain a promise to consider the Badgetts' proposal, the bank would have had an obligation to consider the proposal in good faith. But there is another line of analysis in *Badgett* to the contrary. The Badgetts argued that when the bank's loan officer agreed to relay the plaintiffs' proposal to the loan committee, it created a contractual duty of the bank to consider the proposal. The court held that, "the Badgetts acknowledge that their proposal was just that—a proposal, not an agreement—and further negotiations were necessary. [The loan officer's] presentation to the loan committee was a step in the negotiating process.... *If* [his] promise to negotiate is *unenforceable,* it follows that it cannot give rise to a contractual duty." *Id.* (citing *Sandeman v. Sayres,* 50 Wash.2d at 541–42, 314 P.2d 428 (1957) (emphasis added)).

Although the older Washington precedents discourage a conclusion that there can be a contract to negotiate, our uncertainty is heightened by the modern trend in contract law. Most jurisdictions recognize the enforceability of contracts to negotiate in an appropriate case. *See Copeland v. Baskin Robbins U.S.A.,* 96 Cal. App.4th 1251, 117 Cal.Rptr.2d 875, 882 (2002) ("[m]ost jurisdictions which have considered the questions have concluded that a cause of action will lie for a breach of a contract to negotiate the terms of an agreement."). *See also Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d

429, 433 (7th Cir.1993) (applying Illinois law); *Channel Home Ctrs. v. Grossman,* 795 F.2d 291, 298–300 (3rd Cir.1986) (applying Pennsylvania law); *Chase v. Consol. Foods Corp.,* 744 F.2d 566 (7th Cir.1984) (applying Illinois law); *Fickes v. Sun Expert, Inc.,* 762 F.Supp. 998, 1001 (D.Mass. 1991); *Thompson v. Liquichimica of America, Inc.,* 481 F.Supp. 365, 366 (S.D.N.Y.1979); *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 239 (N.D.Ill.1976); *Am. Broad. Co. v. Wolf,* 52 N.Y.2d 394, 438 N.Y.S.2d 482, 420 N.E.2d 363 (1981); *Itek Corp. v. Chicago Aerial Industries, Inc.,* 248 A.2d 625, 629 (Del.1968). *But see Budget Mktg., Inc. v. Centronics Corp.,* 927 F.2d 421 (8th Cir.1991) (applying Iowa law). Many modern commentators also support this conclusion. *See,* E. Allan Farnsworth, *Farnsworth on Contracts,* § 3.26 at 363 (2d ed.1998); Melvin Eisenberg, *Symposium on the Law in the Twentieth Century: The Emergence of Dynamic Contract Law,* 88 Cal. L.Rev. 1743, 1796–97 (2000); E. Allan Farnsworth, *Precontractual Liability and Preliminary Agreements: Fair Dealing and Failed Negotiations,* 87 Colum. L.Rev. 217, 273 (1987); Charles Knapp, *Enforcing the Contract to Bargain,* 44 N.Y.U. L.Rev. 673, 728 (1969). *But see Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 96 F.3d 275, 276–81 (7th Cir.1996).

Because this question of state contract law is not entirely settled in Washington, and because, if clarified definitively by the Washington State Supreme Court, the answer will have far-reaching effects on those who contract in, or are subject to, Washington law, we have concluded that an appropriate course of action for us is to certify this issue to the Washington State Supreme Court.[3]

---

[3]. Whether to answer the certified question is within the discretion of the Washington State Supreme Court. *Broad v. Mannesmann Anla-* *genbau, A.G.,* 141 Wash.2d 670, 676, 10 P.3d 371 (2000).

If the Washington State Supreme Court gives an opinion that it does not recognize a contract to negotiate in this case, we will affirm the district court on that basis. Conversely, if the Washington State Supreme Court decides to recognize a contract to negotiate in this case, we will reverse the district court's order granting summary judgment to Xerox. As we will explain if it is necessary, there are genuinely disputed material facts that would permit, though not compel, a rational jury to conclude that a contract to negotiate existed and that, if such a contract is recognized in this type of case, Xerox breached it.[4] In this case, a trial will be necessary.

## ORDER

In light of our foregoing discussion, and because the answer to these questions are "necessary ... to dispose" of this appeal, Wash. Rev.Code § 2.60.020, we respectfully certify to the Washington State Supreme Court the following questions:

(1) Will Washington contract law recognize and enforce an agreement, whether implicit or explicit, between two or more parties to negotiate a future contract under the circumstances presented in this case?

(2) If such a contract can exist, what is the proper measure of damages for the breach of a contract to negotiate?

We do not intend our framing of these questions to restrict the Washington State Supreme Court's consideration of any issues that it determines are relevant. If the Washington State Supreme Court decides to consider the certified questions, it may in its discretion reformulate the questions. *Broad v. Mannesmann Anlagenbau AG,* 196 F.3d at 1076 (9th Cir.1999).

If the Washington State Supreme Court accepts review of the certified questions, we designate appellant Keystone as the party to file the first brief pursuant to Wash. R.App. P. 16.16(e)(1).

The Clerk of Court is hereby ordered to transmit forthwith to the Washington State Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record pursuant to Wash. Rev.Code §§ 2.60.010, 2.60.030 and Wash R.App. P. 16.16.

Further proceedings in this court on the certified questions are stayed pending the Washington State Supreme Court's decision whether it will accept review, and if so, receipt of the answer to the certified questions. The case is withdrawn from submission, in pertinent part, until further order from this Court. The panel will resume control and jurisdiction on the certified questions upon receiving an answer to the certified questions or upon the Washington State Supreme Court's decision to decline to answer the certified questions. When the Washington State Supreme Court decides whether or not to accept the certified questions, the parties shall file a joint report informing this court of the decision. If the Washington State Supreme Court accepts the certified questions, the parties shall file a joint status report every six months after the date of the acceptance, or more frequently if circumstances warrant.

It is so **ORDERED.**

---

4. Thus, the certified question is dispositive for our appeal.